David B. Pillemer, Esq., State Bar No. 97808
PILLEMER & PILLEMER
14431 Ventura Blvd., # 564
Sherman Oaks, California 91423
Telephone (818) 994-4321
Facsimile (818) 994-3484
Email: dpillemer@pillemerlaw.com

Attorneys for Plaintiff
STATE FARM GENERAL INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL OF CALIFORNIA

| | |
|---|---|
| STATE FARM GENERAL INSURANCE COMPANY,<br><br>        Plaintiffs,<br><br>    vs.<br><br>AMAZON.COM SERVICES, INC., SEIVI Tech NO 7, MORNGC, and DOES 1-40, inclusive,<br><br>        Defendants. | Civil No.:<br><br>**COMPLAINT FOR:**<br>**1) NEGLIGENCE – PRODUCT DESIGN**<br>**2) NEGLIGENCE – MANUFACTURING DEFECT**<br>**3) STRICT PRODUCT LIABILITY – PRODUCT DESIGN**<br>**4) STRICT PRODUCT LIABILITY – MANUFACTURING DEFECT**<br><br>TRIAL DATE: None Set<br>ACTION FILED: |

Plaintiff alleges:

GENERAL ALLEGATIONS

1.    That at all times mentioned herein, plaintiff, State Farm General Insurance Company, (hereinafter "State Farm") was and now is a corporation duly organized and existing under and by virtue of the laws of the State of Illinois and authorized to conduct fire and casualty insurance business in the State of California.

2.    That at all times mentioned herein, Amazon.Com Services, Inc (hereinafter

m:\opn\17825\complaint_comp 251112.11432 8.docx

PILLEMER & PILLEMER

"Amazon") was and now is a Delaware corporation authorized to and doing business in the County of Los Angeles, State of California.

3. That at all times mentioned herein, SEIVI Tech No. 7 (hereinafter "Seivi") was and now is a business entity, type unknown, authorized to and doing business in the County of Los Angeles, State of California.

4. That at all times mentioned herein, MORNGC (hereinafter "MORNGC") was and now is a business entity, type unknown, authorized to and doing business in the County of Los Angeles, State of California.

5. That at all times mentioned herein, Benefo Ofosu-Benefo, (hereinafter "Ofosu-Benefo")  was insured under policy number 71-GQ-P373-0.  Said policy was in full force and effect at all times relevant hereto and provided coverage for damage to and destruction of the property of Ofosu-Benefo located at Pasadena, (hereinafter "Ofosu-Benefo property").

6. That by the terms of said policy of insurance, plaintiff was to reimburse said insureds for damages to or destruction of the aforementioned property due to a covered loss.

7. That all times mentioned herein, Amazon operates an online marketplace for consumers – amazon.com – that includes listings for consumer products which it then sells and distributes the consumer products to the general public utilizing its Fulfilled by Amazon ("FBA") program.

<u>JURISDICTION AND VENUE</u>

8. The incident complained of herein occurred within the above-entitled judicial district and/or the Defendants marketed, sold, distributed, or otherwise released products into the stream of commerce within the above-entitled judicial district. Therefore, this action is brought in the proper court.

9. Venue is proper in this Court because the incident took place in Studio City, a neighborhood in the City of Los Angeles, County of Los Angeles, State of California.

## FACTUAL ALLEGATIONS

10.    That on June 21, 2022, Ofosu-Benefo purchased, from Amazon, a SEIVI Rechargeable Batteries with Charger Compatible with Arlo Wireless Security Cameras(VMK3200/VMC3030/VMS3330/3430/3530) (4 Pack). (hereinafter "Batteries" and "Charger"), which was listed as being sold by MORNGC but was sold through Amazon's website utilizing through the FBA program. (A copy of the purchase order is attached hereto as Exhibit 1)

11.    The Batteries and Charger were stored and then sold and delivered by Amazon to Ofosu-Benefo on June 24, 2022.

12.    That the Batteries and Charger were delivered to Ofosu-Benefo by Amazon through its FBA program.

13.    That on or about December 21, 2023, Ofosu-Benefo was charging the Batteries, using the supplied Charger at the Ofosu-Benefo Property when the Charger failed to switch off when the Batteries were fully charged, resulting in thermal runaway of the Batteries and subsequent explosion and then fire, causing the fire sprinkler system at the Ofosu-Benefo Property to activate, causing fire, smoke and water damage to the Ofosu-Benefo Property.

14.    That as a result of the fire, smoke and water that resulted from the Batteries & Charger fire, Ofosu-Benefo suffered property damage.

15.    That the Batteries and Charger were designed, manufactured, assembled, marketed, distributed, sold, and/or otherwise placed into the stream of commerce by Seivi and delivered to Amazon by Seivi and its supplier, MORNGC, for sale through Amazon's FBA program.

16.    At all times relevant herein, Seivi was engaged in the business of designing, manufacturing, distributing, selling, and/or advertising the Batteries & Charger for sale to and use by the general consumer public.

17.    That at all times relevant herein, Amazon contracted with Seivi and MORNGC to supply the Charger & Batteries to Amazon to store, advertise, sell,

m:\opn\17825\complaint_comp 251112.114328.docx

COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

collect payments for the sale and to deliver the Batteries & Charger to the general public.

18.    That it was reasonably foreseeable and intended by the Defendants that the Batteries and Charger would enter into the stream of commerce for and be used within the State of California, and the County of Los Angeles.

19.    That at all times relevant herein, the Batteries and Charger were stored by Amazon at its warehouses, advertised on Amazon's website, then sold by Amazon and delivered to Ofosu-Benefo.

20.    That at all times relevant herein, including but not limited to the time of the fire, the Batteries and Charger were being used in a manner intended and foreseeable by the Defendants.

21.    That at no time relevant herein had the Batteries and Charger been subject to abnormal use, misuse, abuse or in any way altered from the manufactured condition.

22.    That after the fire, an examination of the Batteries & Charger conducted in the presence of and with the participation of experts and/or representatives of Amazon, revealed that the Charger failed to detect the output and detect that the Batteries were fully charged and failed to switch off the charging.  As a result, the Batteries entered thermal runaway and exploded and expelled the jelly roll from the inside of the Battery which then ignited the flammable items located within the Ofosu-Benefo Property.

23.    That Amazon, Seivi and MORNGC were aware of the defect in the design and manufacture of the Batteries and the Charger and were aware that the Charger was likely not to shut off when the Batteries were fully charged and that the Batteries would enter into thermal run away and start fires, as there were many complaints and notices placed on the Amazon portal about the problems with the Batteries & Charger.

24.    At all times relevant herein, the Defendants, as the designers and/or

PILLEMER & PILLEMER

m:\opn\17825\
complaint_co
mp
251112.11432
8.docx

manufacturers or sellers of the Batteries & Charger and/or its components, were aware that the Charger needed to shut off the power to the Batteries once they were fully charged, so as to prevent overloading and thermal run away of the Batteries. This safety feature, that should have been designed and installed into the Charger, was to prevent an overload and thermal runway of the Batteries when they were fully charged.

25.    The Batteries & Charger did not contain any warning or instructions regarding the risk of the Charger failing to stop the charge once the Batteries where full or that the Batteries were susceptible to exploding when over charged.

26.    That the failure of the Charger and the Batteries was due to a design defect in the Charger in that it was not properly designed to cease charging once the Batteries are fully charged, or if it was so designed, it was inadequately designed as the Charger failed to shut off when the Batteries were fully charged.

27.    That the failure of the Charger and the Batteries was due to a manufacturing defect in that the Charger was not manufactured with a mechanism to shut off the Charger once the Batteries are fully charged, or if it did have a shut off in place, it failed to work and resulted in the fire that is the subject matter of this lawsuit.

28.    Given the Defendants' expertise in the design, manufacture, assembly and sale of the Batteries & Charger and/or the components, it was foreseeable to the Defendants that a fire would result from a defect in the design, manufacture, and/or assembly of the Batteries & Charger or its components.

29.    That the Defendants were fully aware that a fire would occur if the Charger failed to shut off the charge to the Batteries once they were fully charged, and that as a result of the failure to shut off the charge, the Batteries would go into overload and thermal run away, explode and expel the jelly roll from the inside of the Battery which would then ignite a fire.  This was

PILLEMER & PILLEMER

m:\opn\17825\
complaint_co
mp
251112.11432
8.docx

COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

reasonably foreseeable to the Defendants.

30.   As a result of the fire, Ofosu-Benefo presented a claim to Plaintiff, State Farm under the policy of insurance issued by State Farm to Ofosu-Benefo.

31.   According to the terms and conditions of the policy of insurance, Plaintiff became obligated to and did reimburse the Insured for the damage and destruction of the Ofosu-Benefo Property.

32.   As a direct and proximate of the deficient design, manufacture and/or sale of the Batteries and Charger or its components, Plaintiff incurred money damages when it compensated the Insured and/or incurred other expenses, all in an amount to be proven at trial, but in no event less than $308,420.31 for the damage sustained by Ofosu-Benefo as a result of the Fire. Plaintiff has paid the Insured's claim, as contemplated by the Policy, not as a volunteer.

33.   Plaintiff has indemnified/compensated the Insured in whole or in part for the same loss for which the Defendants are liable.  The Insured's loss was one for which Plaintiff was not primarily liable.

34.   Plaintiff has, therefore, suffered damages caused by the acts or omissions upon which the liability of the Defendants depends, and justice requires that the loss be entirely shifted from Plaintiff to the Defendants, whose equitable position is inferior to that of Plaintiff.

35.   According to the terms of the insurance policy issued by Plaintiff to the Insured and under California law, Plaintiff became subrogated to all of the rights of the Insured and became entitled to enforce all of the remedies of the Insured against the Defendants.

36.   In addition to the amounts paid under the Policy, Plaintiff seeks recovery of prejudgment interest on the damages to the extent allowed by law.

## FIRST CAUSE OF ACTION – PRODUCTS LIABILITY

### Negligence - Design Defect

37.   That plaintiff refers to and realleges all of the proceeding paragraphs as

m:\opn\17825\complaint_comp 251112.114328.docx

- 6 -

PILLEMER & PILLEMER

though set forth in full herein.

38.    The Defendants Seivi was the designer of the Batteries and Charger and/or its component parts.

39.    That the Batteries are charged by the Charger that were stocked, sold and delivered by Amazon, with the Batteries.

40.    That the Charger is specifically designed to charge the Seivi Batteries and they are sold by Amazon as one unit.

41.     That the Charger serves two purposes.  Firstly to charge the Batteries. Secondly, once the Batteries are fully charged, then the Charger is supposed to turn off the power to the Batteries so that they do not go into thermal runaway and explode.

42.    That the Charger acts as a high limit switch, will normally shut off when it detects that the Batteries have reached the target voltage or are fully charged.

43.    That on December 21, 2023 the Charger failed catastrophically when it failed to shut off the charging to the Batteries, once they had reached the target voltage or they were fully charged.

44.    That the failure of the Charger to shut off once the Batteries had reached the target voltage or were fully charged, was due to a design defect in the Charger in that the internal circuit that detects when the target voltage or current has been reached, should have closed the power to the Batteries when it detected that the Batteries were fully charged, but failed to do so.

45.     During the design of the Charger, the Defendants should have ensured that the Charger was designed to switch off the power to the Batteries once they were fully charged.

46.    The design of the Charger and its component parts, utilized by the Defendants, permitted the continued flow of power to the Batteries, even in the event of overcharging or full charge. This design is inherently unsafe as it allows for continued flow of power to the Batteries even when they were fully charged,

PILLEMER & PILLEMER

COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

thereby creating a fire hazard.

47.    The Defendants knew, or should have known, that the Charger was to be used by the general public.

48.    The Defendants owed a legal duty to Plaintiff and/or its Insured to exercise reasonable care in the design of the Charger and/or its components, including but not limited to the internal circuit that detects when the target voltage or current has been reached.

49.    The Defendants breached its duty by, among other acts and omissions, negligently and carelessly designing the Charger and/or the components thereof, in such a manner as to allow for continued charging of the Batteries even though they are fully charged, which created a fire hazard.

50.    The Defendants negligently, carelessly, tortiously, and wrongfully failed to use reasonable care in the design of said Charger, and/or its components, by failing to use a design that would have ensured that the internal circuit that detects when the target voltage or current has been reached, was designed to stop power to the Batteries once fully charged.

51.    The Defendants knew or should have known that the Charger and its components, including but not limited to the internal circuit that detects when the target voltage or current has been reached, were not properly designed and would create a fire hazard.

52.    The Defendants knew or could reasonably foresee that users of the Charger would trust and rely on the Defendants to design a product that was safe to use and that would not create or present a fire hazard.

53.    The Defendants knew or could reasonably foresee that users of the Charger would be damaged by the inherent risk of fire arising from the defective design of the Charger and/or its components.

54.    The Defendants knew or could have reasonably foreseen that users and others, including the insurance companies for the users, would suffer monetary

m:\opn\17825\complaint_comp 251112.11432 8.docx

COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

and other damages if the Defendants, failed to design the Charger and its components, including but not limited to the internal circuit that detects when the target voltage or current has been reached, in a safe, proper and workmanlike manner and fashion.

55.    The design of the Charger and/or its components, were defective and unsafe at the time the Charger was delivered by Amazon to Ofosu-Benefo in that the Charger presented a risk of fire due to overcharging.

56.    The Charger was not fit for its intended purpose in that the design of the Charger failed to shut off the power to the Batteries when they were fully charged, causing the Batteries to enter thermal runaway and ignite the nearby combustibles, causing the fire.

57.    That at times relevant hereto, Amazon was aware of the defect in the design of the Chargers due to the complaints received from consumers, and even after receiving the complaints, continued to stock, sell and deliver the Chargers and the Batteries to the general public.

58.    As a result of the errors, acts or omissions of the Defendants in the design of the Charger and/or its component, and in continuing to sell a defective product, Plaintiff incurred money damages when it compensated the Insured and/or incurred other expenses, all in an amount to be proven at trial, but in no event less than $308,420.31 for the damage sustained by Ofosu-Benefo as a result of the fire.

## SECOND CAUSE OF ACTION

### (Negligence - Manufacturing Defect )

59.    That plaintiff refers to and realleges all of the proceeding paragraphs as though set forth in full herein.

60.    The Defendant Seivi was the manufacturer of or otherwise involved in the manufacturing of the Charger and Batteries and/or their components, including but not limited to the internal circuit that detects the target voltage or that the

PILLEMER & PILLEMER

m:\opn\17825
complaint_co
mp
251112.11432
8.docx
- 9 -
COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

current has been reached.

61.    The failure of the internal circuit that detects the target voltage or that the current has been reached, to operate properly was due to a defect in the manufacturing of the Charger and/or its components and the internal circuit.

62.    The Charger was defectively manufactured insofar as the Charger failed to detect the output and detect that the Batteries were fully charged and failed to switch off the charging, and thereby deviated in a significant way from otherwise identical units in the same product line, in that the internal circuit failed to shut off the charging once the Batteries were fully charged, resulting in the Batteries entering into thermal runaway and igniting the nearby combustibles, which is not how similar Chargers were manufactured by the Defendants were designed and made to operate.

63.    During the manufacturing process, the Defendants should have ensured that the components of the Charger, including the internal circuit, would shut off the charging once the Batteries were fully charged.

64.    An error or omission in the manufacturing process resulted the internal circuit failing to shut off the charging once the Batteries were fully charged.  This error or omission in the manufacturing processes resulted in the Charger being inherently unsafe, as it allowed for continued overcharging, creating a fire hazard.

65.    The Defendants, owed a legal duty to Plaintiff and/or its Insured to exercise reasonable care in performance and completion of the manufacturing of the Charger, and/or its components, including but not limited to the manufacture of the internal circuit that was supposed to shut off the charging once the Batteries were fully charged.

66.    The Defendants, breached these duties by, among other acts or omissions, negligently and carelessly manufacturing or overseeing the manufacturing of the Charger and/or its components, including the but not

PILLEMER & PILLEMER

m:\opn\17825\
complaint_co
mp
251112.11432
8.docx

- 10 -
COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

limited to the manufacture of the internal circuit that was supposed to shut off the charging once the Batteries were fully charged, thereby creating a fire hazard.

67. The Defendants knew or should have known that the Charger and its components, including but not limited to the Charger, the start relay, the overload mechanisms and the wiring of the Charger, were not properly manufactured and deviated from the other Chargers that the Defendants manufactured.

68. That at times relevant hereto, Amazon was aware of the defect in the manufacturing process as a result of the complaints it received relating to this Charger and Batteries, but notwithstanding the complaints, Amazon continued to stock, sell and deliver the Chargers and the Batteries to the general public

69. The Defendants knew or could reasonably foresee that users of the Charger would trust and rely on the Defendants to manufacture and sell a product that was safe to use and that would not create or present a fire hazard.

70. The Defendants knew or could reasonably foresee that users of the Charger would trust and rely on Amazon to sell and deliver a product that was safe to use and that would not create or present a fire hazard.

71. The Defendants knew or could reasonably foresee that users of the Charger would be damaged due to the inherent risk of fire arising from the defective manufacturing of the Charger and/or its components, including but not limited to the internal circuit that was supposed to shut off the charging once the Batteries were fully charged.

72. The Defendants knew or could have reasonably foreseen that users and others, including the insurance companies for the users, would suffer monetary and other damages if the Defendants failed to perform their duties to ensure that the Charger and its components, including but not limited to the internal circuit that was supposed to shut off the charging once the Batteries were fully charged, were manufactured in a safe, proper and workmanlike manner and

PILLEMER & PILLEMER

m:\opn\17825\
complaint_co
mp
251112.11432
8.docx

- 11 -

COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

PILLEMER & PILLEMER

fashion.

73.    The Charger, and its components, as manufactured by the Defendants, and at the time it left the manufacturing facility, and was sold and delivered by Amazon, was defective and deviated from the intended design, and this defect resulted in the fire.

74.    As a result of the errors, acts or omissions of the Defendants in the manufacturing of the Charger and/or its components, and as a result of stocking, selling and delivering a defective item, Plaintiff incurred money damages when it compensated the Insured and/or incurred other expenses, all in an amount to be proven at trial, but in no event less than $308,420.31 for the damage sustained by the Subject Property as a result.

## THIRD CAUSE OF ACTION

(Strict Product Liability – Design)

75.    That plaintiff refers to and realleges all of the proceeding paragraphs as though set forth in full herein.

76.    The Defendants Seivi was the designer of the Batteries and Charger and/or its component parts.

77.    That the Batteries are charged by the Charger that were stocked, sold and delivered by Amazon, with the Batteries.

78.    That the Charger is specifically designed to charge the Seivi Batteries and they are sold by Amazon as one unit.

79.     That the Charger serves two purposes.  Firstly to charge the Batteries. Secondly, once the Batteries are fully charged, then the Charger is supposed to turn off the power to the Batteries so that they do not go into thermal runaway and explode.

80.    That the Charger acts as a high limit switch, will normally shut off when it detects that the Batteries have reached the target voltage or are fully charged.

81.    That on December 21, 2023 the Charger failed catastrophically when it

m:\opn\17825\
complaint_co
mp
251112.11432
8.docx

failed to shut off the charging to the Batteries, once they had reached the target voltage or they were fully charged.

82.    That the failure of the Charger to shut off once the Batteries had reached the target voltage or were fully charged, was due to a design defect in the Charger in that the internal circuit that detects when the target voltage or current has been reached, should have closed the power to the Batteries when it detected that the Batteries were fully charged, but failed to do so.

83.    During the design of the Charger, the Defendants should have ensured that the Charger was designed to switch off the power to the Batteries once they were fully charged.

84.    The design of the Charger and its component parts, utilized by the Defendants, permitted the continued flow of power to the Batteries, even in the event of overcharging or full charge. This design is inherently unsafe as it allows for continued flow of power to the Batteries even when they were fully charged, thereby creating a fire hazard.

85.    The Defendants knew, or should have known, that the Charger was to be used by the general public.

86.    The Defendants owed a legal duty to Plaintiff and/or its Insured to exercise reasonable care in the design of the Charger and/or its components, including but not limited to the internal circuit that detects when the target voltage or current has been reached.

87.    The Defendants breached its duty by, among other acts and omissions, negligently and carelessly designing the Charger and/or the components thereof, in such a manner as to allow for continued charging of the Batteries even though they are fully charged, which created a fire hazard.

88.    The Defendants negligently, carelessly, tortiously, and wrongfully failed to use reasonable care in the design of said Charger, and/or its components, by failing to use a design that would have ensured that the internal circuit that

m:\opn\17825\complaint_comp 251112.114328.docx

COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

PILLEMER & PILLEMER

detects when the target voltage or current has been reached, was designed to stop power to the Batteries once fully charged.

89.    The Defendants knew or should have known that the Charger and its components, including but not limited to the internal circuit that detects when the target voltage or current has been reached, were not properly designed and would create a fire hazard.

90.    The Defendants knew or could reasonably foresee that users of the Charger would trust and rely on the Defendants to design a product that was safe to use and that would not create or present a fire hazard.

91.    The Defendants knew or could reasonably foresee that users of the Charger would be damaged by the inherent risk of fire arising from the defective design of the Charger and/or its components.

92.    The Defendants knew or could have reasonably foreseen that users and others, including the insurance companies for the users, would suffer monetary and other damages if the Defendants, failed to design the Charger and its components, including but not limited to the internal circuit that detects when the target voltage or current has been reached, in a safe, proper and workmanlike manner and fashion.

93.    The design of the Charger and/or its components, were defective and unsafe at the time the Charger was delivered by Amazon to Ofosu-Benefo in that the Charger presented a risk of fire due to overcharging.

94.    The Charger was not fit for its intended purpose in that the design of the Charger failed to shut off the power to the Batteries when they were fully charged, causing the Batteries to enter thermal runaway and ignite the nearby combustibles, causing the fire.

95.    That at times relevant hereto, Amazon was aware of the defect in the design of the Chargers due to the complaints received from consumers, and even after receiving the complaints, continued to stock, sell and deliver the

m:\opn\17825\complaint_comp 251112.114328.docx

COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

PILLEMER & PILLEMER

Chargers and the Batteries to the general public.

96.    As a result of the errors, acts or omissions of the Defendants in the design of the Charger and/or its component, and in continuing to sell a defective product, Plaintiff incurred money damages when it compensated the Insured and/or incurred other expenses, all in an amount to be proven at trial, but in no event less than $308,420.31 for the damage sustained by Ofosu-Benefo as a result of the fire.

### FOURTH CAUSE OF ACTION

(Strict Liability – Product Manufacturing)

97.    That plaintiff refers to and realleges all of the proceeding paragraphs as though set forth in full herein.

98.    The Defendant Seivi was the manufacturer of or otherwise involved in the manufacturing of the Charger and Batteries and/or their components, including but not limited to the internal circuit that detects the target voltage or that the current has been reached.

99.    The failure of the internal circuit that detects the target voltage or that the current has been reached, to operate properly was due to a defect in the manufacturing of the Charger and/or its components and the internal circuit.

100.    The Charger was defectively manufactured insofar as the Charger failed to detect the output and detect that the Batteries were fully charged and failed to switch off the charging, and thereby deviated in a significant way from otherwise identical units in the same product line, in that the internal circuit failed to shut off the charging once the Batteries were fully charged, resulting in the Batteries entering into thermal runaway and igniting the nearby combustibles, which is not how similar Chargers were manufactured by the Defendants were designed and made to operate.

101.    During the manufacturing process, the Defendants should have ensured that the components of the Charger, including the internal circuit, would shut off

PILLEMER & PILLEMER

m:\opn\17825\
complaint_co
mp
251112.11432
8.docx

COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

the charging once the Batteries were fully charged.

102.   An error or omission in the manufacturing process resulted the internal circuit failing to shut off the charging once the Batteries were fully charged.  This error or omission in the manufacturing processes resulted in the Charger being inherently unsafe, as it allowed for continued overcharging, creating a fire hazard.

103.   The Defendants, owed a legal duty to Plaintiff and/or its Insured to exercise reasonable care in performance and completion of the manufacturing of the Charger, and/or its components, including but not limited to the manufacture of the internal circuit that was supposed to shut off the charging once the Batteries were fully charged.

104.   The Defendants, breached these duties by, among other acts or omissions, negligently and carelessly manufacturing or overseeing the manufacturing of the Charger and/or its components, including the but not limited to the manufacture of the internal circuit that was supposed to shut off the charging once the Batteries were fully charged, thereby creating a fire hazard.

105.   The Defendants knew or should have known that the Charger and its components, including but not limited to the Charger, the start relay, the overload mechanisms and the wiring of the Charger, were not properly manufactured and deviated from the other Chargers that the Defendants manufactured.

106.   That at times relevant hereto, Amazon was aware of the defect in the manufacturing process as a result of the complaints it received relating to this Charger and Batteries, but notwithstanding the complaints, Amazon continued to stock, sell and deliver the Chargers and the Batteries to the general public

107.   The Defendants knew or could reasonably foresee that users of the Charger would trust and rely on the Defendants to manufacture and sell a product that was safe to use and that would not create or present a fire hazard.

m:\opn\17825\
complaint_co
mp
251112.11432
8.docx

COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

PILLEMER & PILLEMER

108. The Defendants knew or could reasonably foresee that users of the Charger would trust and rely on Amazon to sell and deliver a product that was safe to use and that would not create or present a fire hazard.

109. The Defendants knew or could reasonably foresee that users of the Charger would be damaged due to the inherent risk of fire arising from the defective manufacturing of the Charger and/or its components, including but not limited to the internal circuit that was supposed to shut off the charging once the Batteries were fully charged.

110. The Defendants knew or could have reasonably foreseen that users and others, including the insurance companies for the users, would suffer monetary and other damages if the Defendants failed to perform their duties to ensure that the Charger and its components, including but not limited to the internal circuit that was supposed to shut off the charging once the Batteries were fully charged, were manufactured in a safe, proper and workmanlike manner and fashion.

111. The Charger, and its components, as manufactured by the Defendants, and at the time it left the manufacturing facility, and was sold and delivered by Amazon, was defective and deviated from the intended design, and this defect resulted in the fire.

112. As a result of the errors, acts or omissions of the Defendants in the manufacturing of the Charger and/or its components, and as a result of stocking, selling and delivering a defective item, Plaintiff incurred money damages when it compensated the Insured and/or incurred other expenses, all in an amount to be proven at trial, but in no event less than $308,420.31 for the damage sustained by the Subject Property as a result.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendants, as follows:

m:\opn\17825\ complaint_co mp 251112.11432 8.docx

1.    For damages in the sum of $308,420.31;

2.    For pre-judgment interest in all sums awarded at the legal rate;

3.    For costs of suit herein incurred; and

For such other and further relief as this court deems just and proper.

DATED: March 2, 2026        PILLEMER & PILLEMER

By: _____

DAVID B. PILLEMER
Attorneys for Plaintiff, State Farm General
Insurance Company

m:\opn\17825\
complaint_co
mp
251112.11432
8.docx

COMPLAINT FOR: 1) NEGLIGENCE – PRODUCT DESIGN
2) NEGLIGENCE –MANUFACTURING DEFECT

PILLEMER & PILLEMER